Julio **RODRIGUEZ** et al., Plaintiffs,

v.

**CONAGRA, INC.,** and its whole-owned subsidiary Molinos De Puerto Rico, Inc., Defendants.

Civ. No. 816–73.

United States District Court,
D. Puerto Rico.

Nov. 14, 1974.

George Weasler, Santurce, P. R., for plaintiffs.

Francis, Doval, Colorado & Carlo, Hato Rey, P. R., for defendants.

## OPINION AND ORDER

TOLEDO, Chief Judge.

The complaint in this case was filed on September 7, 1973. An amended complaint was filed on April 5, 1974. The instant amended complaint is one for damages allegedly resulting from

discharge of plaintiffs from the employment of defendant, Molinos de Puerto Rico, Inc., supposedly because of their membership and concerted activities on behalf of "Asociación de Supervisores" (hereinafter referred to as the Asociación).

Defendant Conagra, Inc. (hereinafter referred to as Conagra), is a corporation organized under and exists by virtue of the Laws of the State of Nebraska of which State it is a citizen and where it maintains its principal office and place of business. Conagra is authorized to do business in Puerto Rico.

Defendant Molinos de Puerto Rico, Inc. (hereinafter· referred to as Molinos), is a corporation organized under and exists by virtue of the Laws of the State of Nebraska of which state, it is a citizen and where it maintains its principal office and place of business in Puerto Rico.

Each of the plaintiffs was a regular and permanent employee of the defendant. The Asociación came into existence through the concerted activities of the plaintiffs and others as a labor organization whose purpose was to represent certain employees of the defendant concerning wages, hours and other conditions of employment. Prior to October 20, 1972, Julio Rodriguez, one of the plaintiffs, was duly elected president of the Asociación, which represented a majority of the "supervisory" employees of the defendant.

Julio Rodriguez, acting on behalf of the Asociación and its members, requested that the defendant recognize the Asociación as the collective bargaining representative of certain defendant's employees and bargain with it concerning wages, hours and other conditions of employment.

On or about October 20, 1972, plaintiff Julio Rodriguez was discharged from his employment because of his membership in an activity on behalf of the Asociación. On or about October 20, 1972, the plaintiffs and other employees engaged in a concerted protest and strike because of the discharging of plaintiff Julio Rodriguez.

On October 24, 1972, the defendant discharged or forced the plaintiffs to resign from their employment. Two days later, the plaintiffs through Julio Rodriguez, as president of the Asociación, filed unfair labor practice charges with the National Labor Relations Board alleging illegal discharge of the defendants and the refusal to recognize the Asociación as the majority representative of certain of its employees. On November 29, 1972, the Regional Director of the National Labor Relations Board refused to issue complaint contending that plaintiffs were supervisors and the National Labor Relations Act (hereinafter the Act), exempts employers from the duty to consider supervisors as employees under any law relating to collective bargaining and that it was not an unfair labor practice for the defendant to refuse to bargain with an organization representing supervisors.

Plaintiffs timely appealed from the decision of the Regional Director to the General Counsel of the National Labor Relations Board in Washington, D.C.

On January 9, 1973, the General Counsel of the National Labor Relations Board notified the plaintiffs it was denying the appeal of plaintiffs for substantially the same reasons given by the Regional Director.

Charges similar to those described above were filed on February 21, 1973, with the Puerto Rico Labor Relations Board.

The President of the Puerto Rico Labor Relations Board notified the plaintiffs, on May 21, 1973, he was dismissing the charges described on the grounds that said Board did not have jurisdiction over the operations of the defendants. This decision was appealed and on June 1, 1973, the Puerto Rico Labor Relations Board issued a resolution refusing to issue complaint against the defendant.

Defendant filed a motion to dismiss on May 17, 1974, Plaintiffs have also filed a motion for summary judgment.

Jurisdiction is invoked under Title 42, United States Code, Section 1983.

Section 1983 of Title 42, United States Code, provides:

"Every person who, under color [of law] of any statute, ordinance, regulation, custom, or usage of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress".

In the case at bar, the defendants are two private corporations.

■ It is generally recognized that private citizens and firms are not generally acting under "color of law" and, accordingly, are not ordinarily suable under Title 42, United States Code, Section 1983. United States v. Guest, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966).

■■ A private party involved in a conspiracy, even though not an official of the State, can be liable under Section 1983. Private persons *jointly* engaged with the State officials in the prohibited action, are acting under color of law for purposes of the statute. To act "under color of law" does not require that the accused be an officer of the State. It is enough that he is a *willful participant* in the joint activity with the State or its agents. United States v. Price, 383 U.S. 787, 794, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966).

■ In this case the plaintiffs have failed to allege that defendants have acted jointly or willingly with the state or its agent so as to come within the jurisdiction of the Civil Rights Act.

This Court in the case of Montañez v. Colegio de Tecnicos de Refrigeracion y Aire Acondicionado de Puerto Rico, 343 F.Supp. 890 (D.C.P.R.1972), expressed the following:

"The requirements that the action be taken under color of state law is a 'sine qua non' requirement for the establishment of a claim for relief under Civil Rights Statute giving right of action, in tort or injunction, to every individual whose federal rights are usurped by any person acting under color of state law. Although state officers are usually the only people who can act with the authority of the state in order to be a misuse of power derived from the state, state action can be established if defendants who are not involved with the state are, notwithstanding, 'wilful participants' in joint activity with the State or its agents". United States v. Price, [supra].

■ The test of color of law can rarely be satisfied in the case of anyone other than the state officer. Weyandt v. Mason's Stores, 279 F.Supp. 283 (D.C. Pa.1968).

Since the complaint does not comply with the requirements to obtain jurisdiction under Section 1983 of the Civil Rights Act, this Court lacks jurisdiction and defendant's motion to dismiss is hereby granted.

■ In addition to what has already been decided, we understand it is important to point out that the National Labor Relations Act excluded supervisors from the protections of the Act and thus freed employers to discharge supervisors without violating the Act's restraint against discharges on account of labor union membership.

In the case of Beasley v. Food Fair of North Carolina, Inc., 416 U.S. 653, 94 S.Ct. 2023, 40 L.Ed.2d 443 (1974), the issue involved was whether the Taft-Hartley amendments[1] of the National

---

1. "The three amendments relevant to this case provide:

"§ 2(3) 'The term "employee" shall include any employee, and shall not be limited to the employees of a particular employer, unless the Act explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection

Labor Relations Act freed the employer from liability in *damages* to the discharged supervisors. The answer was given in the affirmative.

Congress enacted Taft-Hartley amendments (Sections 2(3), 2(11) and 14(a)) for the express purpose of relieving employers of obligations under the Act when supervisors, if employees under the Act, would be the focus of concern.

Employers were not to be obliged to recognize and bargain with unions including or composed of *supervisors*, because supervisors were management *obliged* to be loyal to their employer's interests, and then identity with the interests of rank and file employees, might impair that loyalty and threaten realization of the basic ends of Federal labor legislation. Beasley v. Food Fair of North Carolina, Inc., supra, at 4692.

The dominant purpose of Congress in enacting these amendments was to redress a perceived imbalance in labor-management relationships that was found to arise from putting supervisors in the position of serving two masters with two opposed interests.

No one, whether employer or employee need have as his agent one who is obligated to those on the other side, or one whom, for any reason, he does not trust.

H.R.Rep. No. 245 80th Cong. 1st Sess. 17 (1947).

█ Thus, while supervisors are permitted to become union members, Congress sought to insure the employer of the loyalty of his supervisors by reserving in him the right to refuse to hire union members as supervisors. See Carpenters District Council of Milwaukee County v. NLRB, 107 U.S.App.D.C. 55, 274 F.2d 564 (1959), A. H. Bull Steamship Co. v. National Marine Engineers' Beneficial Assn., 250 F.2d 332 (2 Cir. 1957), the rights to discharge such supervisors because of their involvement in union activities or union membership, see Beasley v. Food Fair of North Carolina, Inc., supra. See also Oil City Brass Works v. NLRB, 357 F.2d 466 (5 Cir. 1966); NLRB v. Griggs Equipment, Inc., 307 F.2d 275. (5 Cir. 1962); Florida Power & Light Co. v. International Brotherhood of Electrical Workers, Local 641, 417 U.S. 790, 94 S.Ct. 2737, 41 L.Ed.2d 477 (1974), and the right to refuse to engage in collective bargaining with them. See L. A. Young Spring & Wire Corp. v. NLRB, 82 U.S. App.D.C. 327, 163 F.2d 905, cert. denied 333 U.S. 837, 68 S.Ct. 607, 92 L.Ed. 1121 (1948).

Wherefore, plaintiff's motion for summary judgment is hereby denied.

with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment, but shall not include any individual employed as an agricultural laborer, or in the domestic service of any family or person at his home, or any individual employed by his parent or spouse, or any individual having the status of an independent contractor, or any individual employed as a supervisor, or any individual employed by an employer subject to the Railway Labor Act, as amended from time to time, or by any other person who is not an employer as herein defined.'
61 Stat. 137–138.

"§ 2(11) 'The term "supervisor" mean any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.'
61 Stat. 138.

"§ 14(a) 'Nothing herein shall prohibit any individual employed as a supervisor from becoming or remaining a member of a labor organization, but no employer subject to this Act shall be compelled to deem individuals defined herein as supervisors as employees for the purpose of any law, either national or local, relating to collective bargaining.'
61 Stat. 151."