**NESGLO, INC., et al., Plaintiffs,**

v.

**The CHASE MANHATTAN BANK, N.A. et al., Defendants.**

**Civ. No. 79–1674 (GG).**

United States District Court, J.D. Puerto Rico.

Feb. 8, 1983.

Edelmiro Salas García, Hato Rey, P.R., for plaintiffs.

Leopoldo J. Cabassa, Fiddler, González & Rodríguez, San Juan, P.R., for defendants.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

GILBERTO GIERBOLINI, District Judge.

In our Opinion and Order of December 2, 1980 we dismissed the complaint in this case, *Nesglo, Inc. v. Chase Manhattan Bank, N.A.,* 506 F.Supp. 254 (DCPR 1980); however, parallel proceedings were being carried out in the state local courts which continued their course. Our dismissal of the complaint was appealed to the United States Court of Appeals for the First Circuit and on September 14, 1981 that court entered the following order:

"This Court, while retaining jurisdiction, remands this matter to the District Court for the purpose of receiving from the parties acceptable translations of such pleadings, docket entries, court actions, and other papers relating to litigation in the courts of the Commonwealth of Puerto Rico as may be relevant to the question whether such litigation may have rendered the instant appeal moot, and for the purpose to expeditiously deciding the issue of mootness and reporting its findings and conclusions to this court.

The parties have agreed to cooperate in assembling the necessary materials without delay. They are to share equally in advancing such monies as may be necessary, the ultimate allocation of such expenses to abide final decision."

In compliance with the aforementioned order, the parties were instructed to file the necessary documents. We also ordered the parties to brief and argue the related matters of *res judicata* and collateral estoppel.

The case was scheduled for hearing but at that time the parties had not reached an agreement as to the documents to be submitted or the translations required. Disagreements between the parties continued. After substantial delays due to that fact, the parties filed legal memoranda which were examined and again we set all the pending matters for oral argument. For the second time we afforded the parties an opportunity to provide the officially certified translation of the state court documents which were finally filed after extended procrastination. Oral arguments were heard and thereafter the parties requested and were granted an additional opportunity to expand upon the arguments made. The additional memoranda were filed and the case was taken under advisement.

After a careful evaluation of all the documentary evidence, the oral arguments and the extensive legal memoranda filed by the parties, we enter the following basic find-

ings of fact and conclusions of law which will be supplemented in the Memorandum Opinion.

### Findings of Fact

1– The parties or their privies in the state court action pending when we initially dismissed the complaint in this case, are the same as those participating in the instant proceedings.

2– The claim and/or defenses raised in the state court proceedings are substantially the same as those before this court.

3– There is a common nucleus of operative facts giving rise to both the state and federal court claims.

4– The plaintiffs in this case, defendants and counterclaimants and their privies in state court, had a full and fair opportunity to litigate their claims against the present defendants (plaintiff and its privies in state court).

5– In the exercise of its valid and proper jurisdiction, the state court dismissed plaintiffs' claims and/or defenses with prejudice for their willful and intentional failure to comply with a discovery order under rules of civil procedure identical to those governing civil actions for the federal district court.

6– The state court judgment became final, firm and unappealable when the state supreme court denied review.

7– No further review of the state court proceedings was sought by the present plaintiffs.

Based on the foregoing findings of fact, we reach the following:

### Conclusions of Law

■ 1– This court must accord full faith and credit to the state court judgment pursuant to 28 U.S.C. Sec. 1738.

■ 2– By virtue of the full faith and credit statute, this court must give preclusive effect to the state court judgment.

■ 3– In view of the fact that the state court judgment disposes of the pending controversy between the parties, the present action has been rendered moot.

Due to the complex procedural history of the present case, a more detailed analysis of the factual framework and the underlying legal theories—both local and federal—upon which it rests, is required. Therefore, we issue the following:

### Memorandum Opinion

On or about November 9, 1978, defendant The Chase Manhattan Bank, N.A. (Chase) initiated a collection of monies and factor's lien suit in the Superior Court of Puerto Rico, San Juan Part (the state court) against plaintiffs Nesglo, Inc. (Nesglo), Néstor Cruz Soto (Néstor) and Gloria D. de Cruz (Gloria).

The complaint alleged that Nesglo had defaulted on a loan and factor's lien contract and owed Chase $460,000 plus interest and $46,000 in legal fees. It requested entry of judgment against Nesglo, Néstor and Gloria in the aforementioned sums of money and, pursuant to the terms of the loan documents [1] including the factor's lien contract, that the court order the transfer to Chase of all Nesglo's inventory, account receivables, and related utilities.

Simultaneously with the filing of the complaint, Chase moved for attachment of Nesglo's inventory, account receivables, ledgers, and other assets described in its motion to that effect. Chase also requested the appointment of defendants Stanley Zych (Zych) and Enrique Fernández (Fernández) both officers of the Bank, as custodians of the property to be attached.

On November 15, 1978 the state court issued an attachment order granting Chase's motion to secure the effectiveness of judgment, and appointed Zych and Fernández as custodians of the property to be attached. The court also issued orders attaching personal real estate and other property belonging to guarantors Néstor

[1]. They consist of the Factor's Lien Contract (Exhibit A), Note (Exhibit B), Continuous and Unlimited Guaranty (Exhibit C), and Collateral Agreement (Exhibit D).

and Gloria. Corresponding writs were also issued and Chase designated the Nesglo goods to be attached.

The attachment was executed by the state court marshals and an inventory prepared, copy of which was delivered to Fernández.

On February 17, 1979 Chase moved for summary judgment accompanying a sworn statement by Mr. Luis Ledee, an officer of the Bank.

On February 27, 1979 Néstor and Gloria replied to Chase's motion for summary judgment denying that they or Nesglo owed any money to Chase and that, in any event, Chase collected usurious interest from Nesglo, the latter being a close corporation.

On or around March 26, 1979 defendants Néstor and Gloria filed a motion accompanying a sworn statement by Néstor dated March 19, 1979. Together with Nesglo, they also filed an answer to Chase's complaint raising a series of affirmative defenses very similar to the allegations found in their complaint before this court. Néstor and Gloria also filed a counterclaim, sworn to by Néstor, as president of Nesglo, and a motion to join Zych and Fernández as defendants.

Néstor's sworn statement dated March 19, 1979 alleged that there was no credit due to Chase from Nesglo, that Chase had not credited certain amounts to Nesglo, had misappropriated certain funds, had refused to honor certain letters of credit, had not given an accounting to Nesglo, had charged Nesglo illegal interest and had imposed certain burdensome and anticompetitive conditions on Nesglo such as forbidding Nesglo to do business with other financial institutions and favoring competitors of Nesglo, also clients of the Bank.

The answer and affirmative defenses filed by Nesglo, Néstor and Gloria generally deny the allegations of Chase's complaint and raise as affirmative defenses fraud, deceit and material misrepresentations, lack of consideration, lack of compliance by Chase of its own obligations, compensation, novation, estoppel and unjust enrichment. They also adduce a defense that Chase violated the Commerce Code of Puerto Rico, the Tie-in Amendments to the Bank Holding Company Act of 1970, P.L. 91–607, Title I, Sec. 106(a) et seq., 12 U.S.C. 1971, et seq. (the Tie-in Amendments), the usury statutes of Puerto Rico and those found in the national banking laws, 12 U.S.C. Secs. 85 and 86.

Néstor's and Gloria's counterclaim incorporates the previous affirmative defenses and pleads claims for relief very similar to those pleaded by them and Nesglo before this court. They also name Zych and Fernández as counterdefendants in the third cause of action of the counterclaim.

In essence, the counterclaim seeks damages arising out of the commercial contractual relationship between Nesglo and Chase because of violations of the Tie-in Amendments; usurious interest under both the federal banking and local laws; federal and local civil rights violations arising out of Chase's, Zych's and Fernández' attachment of Nesglo's goods, account receivables, ledgers and other property; violations of the Commerce Code of Puerto Rico due to the exaction of interest over interest; general breach of contract theories under the laws of Puerto Rico as well as lack of an accounting by Chase; and false and material misrepresentations relating to the promissory note sought to be collected by Chase.

Simultaneously with the filing of the foregoing pleadings, Néstor and Gloria moved to have Zych and Fernández joined as party counterdefendants to the suit. The motion asserted that these Chase officers were indispensable parties with respect to the alleged illegality of the attachment.

On April 25, 1979 Chase moved to dismiss Néstor's and Gloria's counterclaim before the state court. Néstor and Gloria opposed Chase's motion to dismiss asserting, *inter alia,* that their counterclaim arose from facts and transactions intertwined with the breach of the factor's lien agreement sought to be enforced by Chase. They also stressed their standing to sue under the federal Tie-in Amendments and the Civil

Code of Puerto Rico because of their status as sole stockholders and joint and several guarantors of Nesglo by virtue of which they, as guarantors, could interpose against Chase, as creditor, the same defenses and causes of action of debtor Nesglo under the theory that debtors and guarantors are in the same procedural posture *vis a vis* their common creditor.

On August 14, 1979 the state court granted "as requested"[2] Néstor's and Gloria's opposition to Chase's motion to dismiss their counterclaim. Chase then filed a petition for certiorari (interlocutory appeal) from the trial court's decision. The Supreme Court of Puerto Rico denied the petition on October 11, 1979.

Contemporaneously with their opposition to Chase's motion to dismiss their counterclaim, Néstor and Gloria also challenged the legality of the attachment sought by Chase at the commencement of the action in the state court. Chase opposed on the basis of the rights it had arising from the factor's lien contract and applicable Puerto Rican law.

On October 10, 1979 the state court granted Chase's opposition "as requested".

Chase also moved for the sale of all attached goods consisting of Nesglo's inventory, account receivables and cash, invoking the powers that Nesglo had granted it pursuant to the factor's lien contract. The court granted Chase's request and Gloria and Néstor moved, on behalf of Nesglo, for reconsideration of said order attacking the requested sale under federal and local due process grants. This motion for reconsideration was denied.

By this time, Néstor, Gloria and Nesglo had commenced the instant action in federal court. During April 1980 this case was temporarily assigned to the Honorable Ted Dalton, Senior District Judge of the Western District of Virginia, sitting by designation. After a series of unsuccessful settlement conferences, Judge Dalton entered an order suggesting that the parties proceed with the concurrent state action.

After Judge Dalton's suggestion, Nesglo filed in the state court a document containing an answer, affirmative defenses and counterclaim. Together with Néstor and Gloria it also requested that the state court issue summons directed to Zych and Fernández as potential third party defendants. As part of the grounds advanced for the issuance of summons, Nesglo, Néstor and Gloria referred to this action as it stood at that time (May 6, 1980) before this court, also mentioning identity of parties and causes of action in both suits. As per such request, the court entered an order on May 29, 1980 directing issuance of summons against Zych and Fernández, who were duly served with process.

Chase replied and moved to dismiss Nesglo's counterclaim and/or third party complaint. It also objected to Nesglo's amendment to plaintiff's prior answer and affirmative defenses of March 26, 1979.

On June 2, 1980 Nesglo, Néstor and Gloria opposed Chase's motion arguing, *inter alia,* that Nesglo had not answered the complaint initially. Chase replied and in due course the state court granted Chase's motion and denied Nesglo's, Néstor's and Gloria's June 2 opposing motion.

Nesglo, Néstor and Gloria then filed a motion for reconsideration of the aforementioned order and Chase opposed. On July 18, 1980 the state court entered an order denying the aforementioned motion for reconsideration. There is no evidence that this order was ever appealed to the state supreme court.

Meanwhile, Chase also moved to dismiss Nesglo's, Néstor's and Gloria's counterclaim and/or third party complaint claiming that since the counterclaim had been dismissed as to Chase, it could not be asserted against Zych and Fernández. It was also claimed that as a third party complaint it was procedurally incorrect. The state court agreed.

On September 9, 1980, Nesglo, Néstor and Gloria filed a sworn informative motion be-

---

**2.** "As requested" in the courts of Puerto Rico is the equivalent of "Granted and so ordered" in federal court.

fore the state supreme court in a pending collateral incident before said court,[3] wherein they represented that as of September 9, 1980 [4] Nesglo was a defendant and counterdefendant in the state court proceedings. Thereafter, on October 15, 1980, the state court granted Chase's opposition to a partial motion for summary judgment filed by Nesglo, Néstor and Gloria.

On December 2, 1980 we entered an opinion and order dismissing the instant action and Nesglo, Néstor and Gloria appealed to the United States Court of Appeals for the First Circuit. While said appeal was pending, one very important event took place in the local proceedings. The state court issued an Opinion and Judgment dated May 15, 1981, striking all of Nesglo's, Néstor's and Gloria's answers and affirmative defenses and dismissing with prejudice Néstor's and Gloria's counterclaim against Chase. The court also entered the default of defendants and rendered judgment in favor of Chase for the full amount of outstanding indebtedness plus interest, costs and attorney's fees.

In its opinion, the state court, after an extended recitation of the deplorable history of the discovery proceedings, found as a matter of fact that Nesglo, Néstor and Gloria had willfully failed to comply with its discovery orders and had, through their misconduct, abused the state adjudicatory process. (See Document No. 49).

Nesglo, Néstor and Gloria then filed a motion for reconsideration and simultaneously petitioned the state supreme court for a writ of certiorari to review the state court's order of October 15, 1980 denying their partial motion for summary judgment. They emphasized that concurrently with the state court proceedings, they had

"[f]iled a Complaint in the United States District Court for the District of Puerto Rico, in which the same parties and basically the same facts are involved, and have also filed and [sic] appeal before the First Circuit Court in Boston for which said court has set September 2 for oral argument as to the legal basis for said appeal. Exhibit 2".

The state court denied this motion for reconsideration on June 3, 1981.

The petition for certiorari having failed, Nesglo, Néstor and Gloria filed a petition for review again before the state supreme court. In this last petition they referred to some exhibits in their motion for reconsideration and stated that it consisted of:

\* \* \* \* \* \*

"(b) Copy of appellants brief filed before the United States Court of Appeals for the First Circuit in Boston, *in a case between the same parties resulting from the same controversies; ...*" (Emphasis supplied).

Meanwhile, on June 22, 1981, the state supreme court denied the petition for certiorari from the interlocutory order of October 15, 1980 denying Nesglo's, Néstor's and Gloria's motion for partial summary judgment. The court considered the petition to be frivolous and imposed sanctions on petitioners consisting of $500.00 for attorney's fees.

Two motions for reconsideration of this supreme court resolution were filed and both were denied. The petition for review was likewise denied on August 6, 1981 and a motion to reconsider said denial was also rejected on September 4, 1981.

---

**3.** The incident involved a motion to intervene filed by a creditor of Nesglo, Albert E. Rebel & Associates, Inc. ("Rebel") that claimed a preference in its credit to that of Chase. Nesglo, Néstor and Gloria intervened to correct some alleged factual misrepresentations made by Chase in its petition for certiorari. The supreme court finally issued an opinion on November 1981 clarifying the criteria to determine whether Chase's factor's lien credit was of superior rank to that of Rebel. In passing, the

court considered the state court judgment against Chase to be final, firm and unappealable. The court did not take into consideration Nesglo's averments in its informative motion. See, *Nesglo, Inc. v. Chase Manhattan Bank,* 81 JTS 108 (1981).

**4.** By this date, the state court had dismissed Nesglo's May 6, 1980 counterclaim and had denied reconsideration of its order.

Mandates from all state supreme court proceedings were issued and the case returned to the state court on October 13, 1981 (Petition for Review) and on October 19, 1981 (Certiorari).

No evidence in the record exists that Nesglo, Néstor and Gloria perfected an appeal or petition for certiorari to the Supreme Court of the United States from the state supreme court decisions during the pendency of the proceedings before us, as authorized by 28 U.S.C. 1257.

We shall now discuss the legal significance of the aforementioned findings of fact and their bearing on the ultimate issue of mootness.

Plaintiffs initially contend that they have not been afforded an adequate opportunity to argue the issue of mootness because defendants should have been required to state their position first. This contention is frivolous. While it is true that initial memoranda of law were filed simultaneously by both parties, we later held oral argument on all issues raised therein, and plaintiffs were afforded a reasonable opportunity to rebut defendants' assertions. Indeed, at the close of argument, we invited the parties to file additional memoranda so that each could have one last opportunity to discuss the issues raised in their respective briefs and motions.

As to the issue of mootness, we start with the often cited definition given in *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491:

> "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."

Proper disposition of the mootness issue in this case is thus governed by those Supreme Court cases recognizing that an intervening judicial decision in a collateral proceeding may moot a parallel action pending in another court. *Murphy v. Hunt*, 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353

(1982) (civil rights suit brought in federal district court by sex offender challenging a state's constitutional provision restricting bail, on basis of Eight Amendment's prohibition of excessive bail, held to have been rendered moot by intervening state court conviction); *Patterson v. Warner*, 415 U.S. 303, 94 S.Ct. 1026, 39 L.Ed.2d 343 (1974) reh. den. 416 U.S. 952, 94 S.Ct. 1962, 40 L.Ed.2d 302 (upholding constitutionality of state statute vacated on direct appeal to Supreme Court and case remanded for district court's initial consideration of whether action was rendered moot by an intervening state court decision);[5] *Aikens v. California*, 406 U.S. 813, 92 S.Ct. 1931, 32 L.Ed.2d 511 (1972) reh. den. 406 U.S. 978, 92 S.Ct. 2407, 32 L.Ed.2d 677 (court dismisses writ of certiorari on the ground that issue on which writ was granted had been rendered moot by an intervening state court decision); *Lowe v. Duckworth*, 663 F.2d 42 (7th Cir. 1981) (federal habeas corpus petition rendered moot on appeal by intervening state court decision ordering a new trial. Since the court granted the relief sought, there was termination of the live controversy between the parties).

The argument of "voluntary cessation" urged by plaintiffs and expounded in *County of Los Angeles v. Davis*, 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) and followed in *Free v. Landrieu*, 666 F.2d 698 (1st Cir.1981), is not applicable to the facts of this case. As previously stated, we will decide the issue on whether the intervening state judgment fully disposed of the pending controversy between the parties and if so, whether we must accord said judgment full faith and credit pursuant to 28 U.S.C. 1738.

The state court judgment of May 15, 1981 is now final, firm and unappealable. We will now determine whether it should be accorded full *res judicata* effects in this court by virtue of the federal full-faith-and-credit statute. As the Supreme Court recently observed:

5. The procedure used by the Supreme Court in this case to determine mootness—whether a live case or controversy has ceased to exist between the parties on appeal—closely resembles the procedure used herein by the First Circuit Court of Appeals. 415 U.S. at 306, 94 S.Ct. at 1027.

"As one of its first acts, Congress directed that all United States Courts afford the same full-faith-and-credit to state court judgments that would apply in the State's own Courts. Act of May 26, 1790, Ch. 11, 1 Stat. 122, 28 U.S.C. Sec. 1738." *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) reh. den. —— U.S. ——, 103 S.Ct. 20, 73 L.Ed.2d 1405.[6]

If in Puerto Rico a court would give preclusive effects to the state court judgment of May 15, 1981 and the other ancillary decisions made by both the state and supreme courts, then Section 1738 commands that this court do likewise. As we have said earlier, the end effect, consistent with one of the cardinal purposes behind *res judicata,* would be to obliterate any case or controversy hitherto extant between opposing parties to the suit.

In assessing the effects of the state court proceedings we follow the rules laid down by the United States Court of Appeals for the First Circuit in *General Foods v. Mass. Dept. of Public Health,* 648 F.2d 784, 785–786 (1st Cir.1981) for cases falling within the federal question jurisdiction of federal courts (challenge to state regulations on federal grounds in federal court by members of association previously litigating the issue in state court).

"... [w]here the State Court rendering the judgment would give it preclusive effect, federal courts must give it such preclusive effect. [Citations omitted] ... [and] ... [w]here the State Court rendering the judgment would not give it

preclusive effect, the federal courts would not give it such preclusive effect."

Furthermore, it is now well settled that in Puerto Rico, "the doctrine of res judicata, *res judicata pro veritate habetur,* is ... part of [its] Civil Law, and except, for comparative purposes [the courts] need not resort to other sources for its analysis". *Republic Security Corporation v. The Puerto Rico Aqueduct and Sewers Authority,* 674 F.2d 952, 955–956, n. 4 (1st Cir.1982) quoting from *Lausell Marxuach v. Díaz de Yañez,* 103 D.P.R. 533, 535 (1975).

As recently described by this court, after a remand from the First Circuit of Appeals,[7] quoting from a leading Puerto Rico Supreme Court case:[8]

" 'In general terms, it may be affirmed that the rule of res judicata is based on considerations of public policy and necessity: on the one hand, the interest of the State in terminating litigations in order that judicial issues may not be perpetuated, ..., and, on the other hand, the desirability of not submitting a citizen twice to the inconveniences which the litigation of the same cause entails ... *In its origin it presupposed an adversative or litigious proceeding and an adjudication on the merits. However, the complexities of the modern proceeding and the increase in litigation have resulted in its extension—by statutory channels—even to decisions which have not adjudicated the controversies on its merits.* (Emphasis in original)." *Rodríguez v. Baldrich,* 508 F.Supp. 614, 616 (D.P.R.1981).[9]

6. In *Kremer* the Court held that a state court judgment upholding a state agency's rejection of an employment discrimination claim, which would have *res judicata* effects in the state's own courts, precludes a federal action under Title VII of the 1964 Civil Rights Act on the same claim of employment discrimination. In so doing, the Court considerably narrowed the scope of judicial exceptions to the preclusive command of 28 U.S.C. Sec. 1738 in the context of relitigation of federal claims originally filed and disposed of in state courts.

7. *Rodríguez v. Baldrich,* 628 F.2d 691 (1st Cir. 1980) (judgment of dismissal on *res judicata* grounds vacated and remanded to district court for clarification of Puerto Rican law on *res*

*judicata* effect in federal court of a state court dismissal for failure to post a nonresident cost bond).

8. *Pérez v. Bauza,* 83 P.R.R. 213, 217–218 (1961).

9. According to *Pérez v. Bauzá, supra,* as interpreted by *Baldrich, res judicata* in Puerto Rico has the same contours that it has in federal law for it "relieve[s] parties of the cost and vexation of multiple lawsuits, conserves judicial resources, and, by preventing inconsistent decisions, encourages reliance on adjudication". *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980).

The court quoted another passage from *Pérez v. Bauzá, supra,* which is relevant to the issue in this case, namely: a willful failure to comply with a discovery order must be accorded full *res judicata* effect in this court. The Supreme Court of Puerto Rico fully endorses the view that an involuntary dismissal under Rule 39.2 of the Rules of Civil Procedure of Puerto Rico of 1958 [10] (equivalent to Fed.R.Civ.Proc. 41(b)), operates as an adjudication on the merits:

"[T]he pertinent part of the rule reads as follows:

'(b) *Involuntary Dismissal: Effect Thereof.* For failure of the plaintiff to prosecute or to comply with these rules or any order of the court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence, in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, operates as an adjudication upon the merits.

\*　\*　\*　\*　\*　\*

"Rule 41(b) is consistent with the inherent power of courts to relieve the congestion of their calendars . . ., and likewise *it is undoubtedly consistent with the laudable purpose of discouraging delin-* *quent litigants or those who utilize the judicial channel to cause inconveniences to the adverse party by initiating untenable proceedings.'*" (Emphasis in original quotation of Rule 41(b) other emphasis, ours). *Id.*

Clearly a Puerto Rican court would accord full *res judicata* effect, as a matter of statutory law, to a dismissal of claims filed by a recalcitrant party who willfully disregards discovery orders issued by the court, much the same way as a federal court would do in similar circumstances.[11] *Compare, Nasser v. Isthmian Lines,* 331 F.2d 124 (2d Cir.1964) (involuntary dismissal of seaman's complaint for failure to answer interrogatories operates as *res judicata* in subsequent federal suit) *with Souchet v. Cossío,* 83 P.R.R. 730 (1961) (prior involuntary dismissal of action seeking declaration of nullity of a sale, replevin and other remedies for failure to prosecute, accorded full *res judicata* effect in subsequent identical action between the same parties).

The pronouncements of the Supreme Court of Puerto Rico echoed in *Baldrich,* to the effect that public policy requires that procedural or "penalty dismissals"[12] be accorded full *res judicata* effect in subsequent litigation initiated by the parties affected by such dismissals, is not inconsistent with recent pronouncements on the subject by the Supreme Court of the United States.

In *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), the Court accorded full *res judicata* effect to state court determinations made in the course of criminal proceedings in the context of a

**10.** As pointed out in *Baldrich, supra,* 508 F.Supp. at 615, n. 1, the Puerto Rico Rules of Civil Procedure of 1958 were repealed in 1979 by the Rules of Civil Procedure of 1979. Rule 39.2 was reenacted as Rule 39.2(c) and its text, insofar as pertinent here, is identical to that of its predecessor. See, 32 L.P.R.A.App. 111, p. 162 (1980). This rule is virtually identical to Fed.R.Civ.Proc. 41(b) governing involuntary dismissals. In 1943 it was also known as Rule 41(b) of the Rules of Civil Procedure of Puerto Rico, 1943, and such is the reference in the *Bauzá* passage reproduced above.

**11.** In dismissing complaints for failure to comply with discovery orders the trial courts of the Commonwealth of Puerto Rico seem to enjoy the same discretionary latitude as federal district courts. Orderly administration of justice in this sense is identical both in the state and federal systems. See, e.g., *Corchado v. Puerto Rico Marine Management,* 665 F.2d 410 (1st Cir.1981) (circuit court underscores that dismissals with prejudice for failure to comply with discovery orders will ordinarily be upheld as being within sound discretion of trial court).

**12.** See, generally, 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure,* Civil: Sec. 4440, at 362–365 (1981).

subsequent federal civil rights action brought in federal court by the criminal defendant. The Court made it very clear that litigants have no "unencumbered opportunity to litigate a [federal] right in federal district court, regardless of the legal posture in which the federal claim arises". 449 U.S. at 103, 101 S.Ct. at 419. It is only necessary that a particular litigant have a "full and fair opportunity" to present the particular claim or issue in state court. *Id.* at 95, 101 S.Ct. at 415.

The Court has recently stated that the contents of "what a full and fair opportunity to litigate entails is the procedural requirements of due process", *Kremer v. Chemical Construction Corp., supra,* 102 S.Ct. at 1898, n. 24, and the fact that a particular litigant "fail[s] to avail himself of the full procedures provided by state law does not constitute a sign of their inadequacy" [citations omitted]. *Id.* at 1899.

Considering the above, we have no doubt that the courts of the Commonwealth of Puerto Rico would give full preclusive or *res judicata* effects to a dismissal for willful failure to comply with discovery orders, such as was entered here by the state court on May 15, 1981. Notwithstanding, we must now determine whether we should give full preclusive effect to said judgment by virtue of the federal full-faith-and-credit statute, 28 U.S.C. Sec. 1738.

Plaintiffs strenuously argue that there is no identity of parties between this suit and the prior state court proceedings. They contend that even though Chase sued Nesglo, Néstor and Gloria in state court, only Néstor and Gloria filed a "permissive and independent counterclaim" and "Nesglo did not file an answer and was not a counterclaimant". We disagree.

An examination of the answer and affirmative defenses filed in the state court on March 26, 1979 reveals that they were filed on behalf of "defendant" (la parte demandada).[13] Furthermore, in the portion of the counterclaim (reconvención) the appearing defendants are singled out and identified as "defendant-counterclaimant Mr. Néstor Cruz and Mrs. Gloria D. de Cruz" (la parte demandada-reconveniente don Néstor Cruz y doña Gloria D. de Cruz). But aside from party identification in connection with the pleadings, there are other indicia that Nesglo, in fact, appeared and made allegations in the state court. In the answer, practically all of the allegations refer to the business relationship between Chase and Nesglo. The same is true as to the affirmative defenses.

With respect to the counterclaim, while it may be true that it is filed by Néstor and Gloria, it still incorporates the affirmative defenses previously set forth by Nesglo, and sets forth claims for relief properly belonging to Nesglo and not just Néstor and Gloria as joint and several guarantors of the latter. Indeed, a comparison between the counterclaim and the amended complaint filed before this court reveals a substantial similarity, if not identity of, material operative facts underlying the various claims for relief stated in both documents.

■ Physical identity of parties is not necessary for *res judicata* purposes under Puerto Rican substantive law. As Article 1204 of the Civil Code provides, *in fine:*

"It is understood that there is identity of persons whenever the litigants of the second suit are legal representatives of those who litigated in the preceding suit, *or when they are jointly bound with them or by the relationships established by the indivisibility of prestations among those having a right to demand them, or the obligation to satisfy the same.*" 31 L.P. R.A. Sec. 3343 (Emphasis supplied).

The state court record reveals that Néstor and Gloria were the joint and several[14] guarantors of Nesglo's contractual obli-

---

**13.** In Puerto Rico it is common practice to refer to all defendants or the defendants in general as "the party defendant" (literal translation). If a particular defendant or plaintiff is to be singled out then he or she or it (if a corporation) is expressly identified in the pleadings.

**14.** As explained by this court in *Wong v. Key Finance Corporation,* 266 F.Supp. 149, 153, 154

gations to Chase. As such, their prestations were indivisible with those of Nesglo towards Chase and hence they had "a right to demand them, or the obligation to satisfy the same".[15] Indeed, a close examination of Néstor's and Gloria's counterclaim in state court, and their opposition to Chase's motion to dismiss the same, reveals that Néstor and Gloria are the functional privies of Nesglo within the scope and intendment of the "identity" definition found in the last paragraph of Article 1204.

■ The contents of the aforementioned opposition to Chase's motion to dismiss establish that Néstor and Gloria asserted standing on their own behalf and that of Nesglo, to prosecute their federal and state claims against Chase, including those arising out of the Tie-in Amendments, relying on their status as joint and several guarantors of Nesglo, entitled to oppose or interpose against the creditor [*Chase*] the same defenses and/or causes of action that Nesglo would have opposed or interposed. Néstor and Gloria are therefore bound by the Judgment of May 15, 1981 as privies of Nesglo, for purposes of the identity required under Puerto Rican *res judicata* doctrine.[16]

Moreover, Nesglo has expressly admitted on the record that it was a party to the state court answer and counterclaim of March 26, 1979.

Plaintiffs' reliance on *A & P General Contractors v. Asociación Cana, Inc.*, 110 D.P.R. 753 (1981), is misplaced. In *A & P*, a guarantor sued to recover a pledge it had given to the creditor of the principal debtor. When such action was initiated, the principal debtor had already commenced suit against the creditor because of the latter's breach of its contractual obligations to advance money to the former for construction purposes. In the guarantor's suit, as a condition for release of the pledge—a certificate of deposit—the court had to determine whether the creditor had indeed breached the contractual obligations to the principal debtor for then, said breach would not only extinguish the principal debtor's obligations to the creditor, but would also terminate the accessory surety agreement binding the guarantor-pledgor. Upon extinguishment of the prime obligation, the guarantor would thus become automatically entitled to return of the certificate of deposit pledged to the creditor, and this is exactly what happened in the guarantor's suit.

The state supreme court reversed the lower court ruling that had allowed the principal debtor in his separate suit against the creditor, to invoke successfully the doctrine of "offensive collateral estoppel" by judgment on the issue of the creditor's liability for breach of contract. The court advanced two grounds for its decision: (1) that the principal debtor being represented by the same attorneys as the guarantor, could have intervened but had voluntarily chosen not to do so in the guarantor's suit, and (2) that there was really no identity of

(D.P.R.1967), the words "joint" or "jointly" in English are the equivalent of "solidaria" or "solidariamente" in Spanish, which in the case of multiple debtors or guarantors, means that *any* of them are liable for the entire sums owed. The Code also confers standing on solidary debtors to "utilize, against the claim of the creditor, all the exceptions arising from the nature of the obligation and those which are personal to him". Article 1101, 31 L.P.R.A. Sec. 3112. Sureties binding themselves jointly (solidarily) with the principal debtor are treated, according to the Code, as principal solidary debtors subject to the provisions found in Article 1090–1101, 31 L.P.R.A. Secs. 3101–3112. *Wong, supra, Id.*

15. They also had the right to utilize against the claim of Chase, as creditor, all exceptions aris-

ing from the nature of the obligation. Article 1101.

16. The same result would be obtained under the federal *res judicata* principle as the Supreme Court of the United States indicated in a similar context in *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). The Court at page 154 quoting from *Souffront v. Compagnie des Sucreries*, 217 U.S. 475, 486–487, 30 S.Ct. 608, 612–613, 54 L.Ed. 846, observed that "[O]ne who prosecutes or defends a suit in the name of another to establish and protect his own suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own . . . is as much bound . . . as he would be if he had been a party to the record."

parties between the principal debtor and guarantor since the latter was merely suing *qua* guarantor to recover the pledge. *A & P General Contractors, supra.*

As commentator Manresa points out, in discussing the requirement of "identity" of parties for the presumption of *res judicata* to be successfully invoked:

> "With reference to solidarity and indivisibility of obligations, we will note that the extension of the first judgment to all those interested therein shall have full application concerning the totality of the obligation, to its essence or validity, and to the acts wherein its origin is found; but not concerning the very personal circumstances of someone who may not have litigated before, except in the event that they [such circumstances] may have been utilized with respect to the *exclusive portion of said interested person by one of his co-obligees.*

> "It is to be noted, and it has great importance, that the requirement of identity of parties is in practice satisfied when the two suits are in all other respects *exactly* the same, and, presenting the same question, and exercising the same actions, [they are] ground[ed] on the same cause and refer[red] to the same objects."

(Emphasis supplied) (Translation ours). Manresa, *Comentarios al Código Civil,* Tome 8 Vol. II, pp. 242–243 (Reus, 5th Ed.1950).

Scaevola takes the same position on this "identity" issue and concludes that, when two or more persons bound solidarily appear as such in a first suit, their personalities merge or they establish such a procedural unity, that what is done by one or against one binds all the rest, for purposes of *res judicata.* Scaevola, *Código Civil,* Tome XX, p. 450 (Madrid 1904). See also, Puig Brutau, *Fundamentos de Derecho Civil,* Tome I, Vol. 2, p. 146, n. 41 (Bosch.1959). The Supreme Court of Puerto Rico has adopted these doctrinal views. *Heirs of Zayas Berríos v. Berríos,* 90 P.R.R. 537, 551–552 (1964). (Control of first action by real party defendants, sufficient to bar second suit by said defendants due to their juridical solidarity with nominal party defendant appearing in first suit); Cf. *General Foods v. Mass. Dept. of Public Health, infra,* 648 F.2d at 787–789 and note 6; *Pan American Match, Inc. v. Sears Roebuck Co.,* 454 F.2d 871, 874 (1st Cir.), cert. den. 409 U.S. 892, 93 S.Ct. 113, 34 L.Ed.2d 149 (1972).

Plaintiffs next contend that the state court proceedings did not involve the same claims as those pressed before this court. They collaterally attack the state court's jurisdiction over the federal Tie-in Amendment violations they voluntarily raised there as affirmative defenses and counterclaim.[17] Their argument is premised on the theory that Congress vested federal courts with exclusive jurisdiction to entertain this type of claim to the exclusion of state courts. With respect to their federal constitutional and civil rights claims, they contend that Judge Dalton, sitting by designation, somehow reserved plaintiffs' rights to come back to this court.

Upon examining the state court claims pressed by plaintiffs-defendants-counterclaimants therein—and comparing them to the amended complaint filed before this court [18] in September 1979, we find that all of the causes of action pleaded in the state court have their roots in the same nucleus of operative facts comprising the business

---

**17.** Plaintiffs themselves characterize Néstor's and Gloria's state court counterclaim as permissive. Though it is not necessary for us to decide whether such counterclaim is permissive or compulsory for purposes of this opinion, certainly this characterization shows that plaintiffs were not involuntary defendants hauled into state court against their wishes. They freely chose their state forum and must abide by their conduct even if it implies waiver of a federal forum and its protections. See,

*Nash County Board of Education v. Biltmore Co.,* 640 F.2d 484, 492 (4th Cir.1981), cert. den. 454 U.S. 878, 102 S.Ct. 359, 70 L.Ed.2d 188, reh. den. 454 U.S. 1117, 102 S.Ct. 692, 70 L.Ed.2d 654.

**18.** A complete description of the claims set forth in this amended complaint of September 1979 is set out in our original reported opinion and order dismissing this action. See, 506 F.Supp. 254 (D.P.R.1980).

contractual relationship between Chase and Nesglo dating back to 1972. It may be that particular theories, bolstered by statutory citations, vary somewhat, but the essential facts giving rise to the claims asserted are a constant factor in both the state and federal pleadings.

In requesting the state court to issue summons to serve Zych and Fernández as third party defendants, plaintiffs in May 1980 made reference to the federal action and its similarities to the state court proceedings. Later, they even attached an order of this court as part of their opposition to Chase's request for dismissal of Nesglo's counterclaim filed in state court.

In their motion for reconsideration of the judgment entered by the state court on May 15, 1981, and apparently aware of the *res judicata* effect that said judgment would have in the federal proceedings, plaintiffs Nesglo, Néstor and Gloria advanced as a ground in support of their request, the concurrent "complaint in the United States District Court for the District of Puerto Rico, *in which the same parties and basically the same facts are involved*" (emphasis added) as well as the appeal pending before the United States Court of Appeals for the First Circuit. They attached as exhibits copies of the brief filed before the First Circuit Court of Appeals.

In Puerto Rico, strict identity between causes of action in the first and second suits is not required. The cause or grounds for the claim or request should not be confused with the remedies actually sought in one or the other action. *Mercado Riera v. Mercado Riera*, 100 P.R.R. 939, 950–51 (1972).

In *Mercado Riera, res judicata* was applied by the court to a new action for damages arising out of the dissolution of a partnership because in the previous action plaintiff had failed to claim them. The court expressly overruled two prior cases [19] which had rejected the defense of *res judi-*

cata "because, despite the fact that the second action could be joined to the first, the failure to join it did not constitute a waiver of the claim for damages because the right to join several causes of action is discretionary with the plaintiff" [citations omitted]. *Id.* at 953. The trend in Puerto Rico, therefore, is to preclude in the subsequent suit whatever could have been claimed or joined with the first one but was not. This, of course, includes all grounds or defenses that could have been raised either prior to or after judgment in the first suit. And, ordinarily, failure to correct an error in the first action either by motion or on appeal will result in preclusion in the subsequent action, even if the first judgment can be branded as erroneous. Cf. *A.S.A. v. Beléndez*, 98 P.R.R. 506, 510–512 (1970) (failure to appeal first ruling that plaintiff had not exhausted his administrative remedies precludes him from raising lack of jurisdiction of an administrative board in second suit even if jurisdictional theory had changed between suits).

*Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955), advanced by plaintiffs in support of their theory that the state and federal claims are not the same, is distinguishable from the case at bar for there a state court judgment [20] was not involved and under federal principles of *res judicata* new operative facts giving rise to new claims for relief had arisen, as well as new parties joined when the second suit was filed.

In light of the foregoing legal principles, and on the basis of the state court record, we conclude that there is "identity" of claims for *res judicata* purposes between the claims advanced by plaintiffs in this court and those previously advanced in the state court.

Interestingly, plaintiffs seem to attack the state court's jurisdiction over the claims

---

**19.** *Blanco v. The Capital*, 77 P.R.R. 607 (1954) and *Capó v. A. Hartman & Co.*, 57 P.R.R. 190 (1940).

**20.** As *General Foods v. Mass. Dept. of Public Health, supra*, 648 F.2d at 785–786 makes clear,

in the case of a state court judgment deciding federal questions, federal courts must refer to state law on *res judicata* to comply with the command of 28 U.S.C. Sec. 1738.

they voluntarily presented there and which were the subject of extensive discovery, contending that the state court lacked subject matter jurisdiction because Congress granted exclusive jurisdiction to federal courts to entertain private treble damage suits based on violations of the Tie-in Amendments prohibitions found in the federal banking laws.

As we pointed out in our original decision in this case, it was not the intention of Congress to preempt state court jurisdiction over activities otherwise covered by the federal banking tie-in amendments. If so, there would not have been any reason for Congress to have inserted the language in 12 U.S.C. Sec. 1978[21] acknowledging the parallel power of the states to afford relief to any citizen suffering business injury as a consequence of the conduct prohibited by the preceding sections of the act. This congressional concern for preserving intact concurrent state jurisdiction over banking, is reflected in the abridgment of the original prohibition of anticompetitive practices envisioned in the original Senate Bill, so as not to interfere with traditional, localized banking customs and customer credit extension practices. *Nesglo, Inc. v. Chase Manhattan Bank, N.A., supra,* 506 F.Supp. at 261–264.

Indeed, the plain statutory language of 12 U.S.C. Secs. 1975[22] and 1978, is fully compatible with, and does not implicitly repeal or carve an exception to, the full-faith-and-credit mandate found in 28 U.S.C. Sec. 1738. In *Kremer v. Chemical Construction Corporation, supra,* the Supreme Court of the United States refused to construe the statutory grant of a right to federal court access granted to victims of employment discrimination under Title VII of the Civil Rights Act of 1964, as impliedly repealing the mandate of 28 U.S.C. Sec. 1738. Likewise, the deference to state court jurisdiction over banking affairs embodied in 12 U.S.C. Sec. 1978, as supported by the legislative history of the bank Tie-in Amendments, should disprove such implied repeal of or exception to a time-tested federal statute of such practical significance for present-day comity and federalism.

Plaintiffs brought upon themselves the natural consequences of their own voluntary acts before the state court. So much is apparent from the state court Opinion and Judgment of May 15, 1981. In this sense, the state court judgment is, in principle, no different from the state court judgment by stipulation entered and given full *res judicata* effect by a federal court in *Nash County Board of Education v. Biltmore Co.,* 640 F.2d 484 (4th Cir.1981), cert. den. 454 U.S. 878, 102 S.Ct. 359, 70 L.Ed.2d 188 reh. den. 454 U.S. 1117, 102 S.Ct. 692, 70 L.Ed.2d 654.

In *Nash* a state county board of education sued in federal district court various milk producers seeking treble damages for a price fixing conspiracy in violation of the federal antitrust laws. However, the State Attorney General had previously entered into a consent decree with the milk producers in a prior state action he had brought under the state antitrust laws. The federal district court gave full *res judicata* effect to the state court judgment and dismissed the action. The U.S. Court of Appeals for the Fourth Circuit affirmed, holding that 28 U.S.C. Sec. 1738 barred the second suit. The court used various alternative theories

---

**21.** 12 U.S.C. Sec. 1978 provides as follows:

"Nothing contained in this chapter shall be construed as affecting in any manner the right of the United States or any other party to bring an action under any other law of the United States or of any State, including any right which may exist in addition to specific statutory authority, challenging the legality of any act or practice which may be proscribed by this chapter. No regulation or order issued by the Board under this chapter shall in any manner constitute a defense to such action."

**22.** 12 U.S.C. Sec. 1975 provides as follows:

"Any person who is injured in his business or property by reason of anything forbidden in section 1972 of this title may sue therefor in any district court of the United States in which the defendant resides or is found or has an agent, without regard to the amount in controversy, and shall be entitled to recover three times the amount of the damages sustained by him, and the cost of suit, including a reasonable attorney's fee."

to support its conclusion that the state court judgment was entitled to full-faith-and-credit in the federal court even though the antitrust laws had been judicially construed to confer exclusive federal jurisdiction on federal courts.[23] In comparing the state and federal claims, it focused on the operative facts giving rise to both claims rather than on the statutory source for each, and attached significant consequences to the conduct of plaintiffs' representative in prosecuting the claims in state court:

"... the plaintiff, *by choosing to file the state action on the same cause of action, had voluntarily waived the benefits if any, of a federal forum and both res judicata and collateral estoppel should be available to bar a cause of action,* even though the federal action was within the exclusive jurisdiction of a federal court." (Emphasis supplied).

*Nash, supra,* 640 F.2d at 497.

As the Supreme Court stated in *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), a party who has litigated in a prior action will be held to his conduct therein, and if he fails to pursue a remedy within the prior action that could have preserved his rights, he may not thereafter seek collateral relief in the federal courts. The virtues of *res judicata* were further stressed in *Moitie* as an important tool for the even handed administration of justice within the federal system. Petitioners-retail purchasers of clothing—Moitie and Brown—had initially filed an antitrust suit in a California federal district court alleging a price fixing conspiracy among retail chain stores in California. The action was dismissed because, at that time, ultimate consumers or purchasers of products were considered not to have standing to sue under federal antitrust laws. They did not appeal the decision of the district court whereas other plaintiffs *did* appeal. While the latter appeal was pending, the Supreme Court issued an opinion recognizing retail purchasers standing to sue under federal antitrust law,[24] and the appeals court reversed and remanded. Meanwhile, Moitie and Brown had refiled their antitrust claims in state court under California's antitrust laws. Defendants removed the same to the federal district court that had previously entertained the action and now had it on remand from the court of appeals, which had vacated the dismissal in light of the intervening Supreme Court decision on standing. Defendants then moved for dismissal and the court granted it considering its prior decision to be *res judicata* as to Moitie and Brown. An appeal was taken, and the court of appeals reversed because it considered the district court's initial decision to be erroneous, and hence, unjust for Moitie and Brown to suffer the consequences of a dismissal while those in their same procedural posture were allowed to prosecute identical claims. Defendants finally appealed to the Supreme Court and the latter reversed the court of appeals.

The Supreme Court underscored the conduct of Moitie and Brown in the first action and the fact that they *failed to appeal* the initial district court decision, even though the same was later reversed as being erroneous. Whether the decision was correct or not was considered by the court to be immaterial for *res judicata* purposes,[25] because

---

**23.** In so doing, the court adopted Moore's comments on *Connelly v. Balkwill,* 174 F.Supp. 49, 60 (N.D.Ohio 1959), aff'd. 279 F.2d 685 (6th Cir.1960). *Nash, supra,* 640 F.2d at 488, n. 10. The Supreme Court of the United States has noted the *Nash* method of ascertaining whether there is identity of claims in *Kremer v. Chemical Construction Corp., supra.*

**24.** *Reiter v. Sonotone Corp.,* 442 U.S. 330, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979) held that retail purchasers can suffer an "injury" to their business or property within the meaning of section 4 of the Clayton Act, which grants a private treble damage remedy to persons suffering business injury as a consequence of an antitrust violation.

**25.** Defendants read the *Moitie* decision as signaling the demise of the judicially created doctrine of exclusive federal judicial jurisdiction in antitrust cases. See *Nash, supra,* 640 F.2d 492, n. 13. They argue that inasmuch as the Supreme Court acted on an action removed from state court, if the pleadings, as the court stated, merely reproduced the initial federal antitrust claims originally filed in the district court, then the state court had no subject matter jurisdic-

Moitie and Brown had foregone an initial appeal when their original federal action had been dismissed. They had available an appellate procedure, which they should have used regardless of the settled antitrust doctrine prevalent at that time (prior to the *Sonotone* decision).

The reasoning in *Moitie* is fully applicable here. Plaintiffs Nesglo, Néstor and Gloria had a full and fair opportunity to present their case in state court, including any objections they may have had to the subject matter jurisdiction of the state court. They voluntarily chose not to avail themselves of that opportunity and they seek further prosecution of their claims in this court

tion over the action and the district court could acquire none on removal. *General Investment Co. v. Lake Shore & M.S.R. Co.*, 260 U.S. 261, 288, 43 S.Ct. 106, 117, 67 L.Ed. 244 (1922) (federal court *must dismiss* for want of jurisdiction federal antitrust action originally filed in state court and subsequently removed to the former court). See also, *Blumenstock Bros. Adv. Agency v. Curtis Pub. Co.*, 252 U.S. 436, 40 S.Ct. 385, 64 L.Ed. 649 (1920); *Freeman v. Machine Co.*, 319 U.S. 448, 451, n. 6, 63 S.Ct. 1146, 1148, n. 6, 87 L.Ed. 1509 (1943); *but see, Testa v. Katt*, 330 U.S. 386, 389–394, 67 S.Ct. 810, 812–814, 91 L.Ed. 967 (1947) (state court is obligated under supremacy clause, to enforce private treble damage remedy—similar to that in antitrust laws—found in Emergency Price Control Act of 1942, as amended, regardless whether it be considered "penal" in nature). A remand was thus in order and the *res judicata* question need not have been decided. A careful review of the *Moitie* Supreme Court decision reveals that indeed the court was aware of the removal problem, but nevertheless chose to entertain the *res judicata* arguments. *Moitie, supra,* 452 U.S. at 397, n. 2, 101 S.Ct. at 2427, n. 2.

While defendants' arguments certainly bear weight, we find it unnecessary to reach this issue on the present record. Whether or not the state court here had subject matter jurisdiction of the federal claims before this court, is really immaterial in view of the opportunities available to the plaintiffs to redress any jurisdictional errors within the state court system.

We remain unpersuaded that Congress intended to vest federal courts with jurisdiction exclusive of that of state courts to entertain private treble damage actions under the Tie-in Amendments, especially, under the criteria set forth in *Gulf Offshore Co. v. Mobil Oil Corp.,* 449 U.S. 1033, 101 S.Ct. 607, 66 L.Ed.2d 494 to determine whether a congressional grant of federal jurisdiction displaces state court jurisdiction over the same federal claims:

under the theory, rejected in *Allen v. McCurry, supra,*[26] that "every person asserting a federal right is entitled to one unencumbered opportunity to litigate that right in a federal district court, regardless of the legal posture in which the claim arises". 449 U.S. at 103, 101 S.Ct. at 419.

Let us now examine plaintiffs' assertion that they preserved their federal rights in this court pursuant to Judge Dalton's Order of April 22, 1980. Plaintiffs' reliance on *England v. Louisiana State Bd. of Med. Exam.,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964) is again misplaced. Contrary to the *England* situation, where plain-

1) an explicit statutory directive;
2) an unmistaken implication from legislative history, and
3) a clear incompatibility between state court jurisdiction and federal interests.

Aside from the fact that in the case of Tie-in Amendments, there is no explicit statutory directive or legislative history permitting an inference of exclusive jurisdiction—the contrary is just the situation as embodied in 12 U.S.C. Sec. 1978—we fail to perceive a clear incompatibility between state court jurisdiction and the commercial interests sought to be protected by Congress in the amendments. The broad traditional regulatory power of banking by the states, taken into consideration by Congress in enacting the Tie-in Amendments, certainly makes entertainment of such federal claims by state courts conducive to the enforcement of federal rights. *Kremer v. Chemical Construction Corp.,* supra; *Dowd Box Co. v. Courtney,* 368 U.S. 502, 507–508, 82 S.Ct. 519, 522–523, 7 L.Ed.2d 483 (1962) (concurrent jurisdiction of state courts upheld in actions under Section 301 of the Labor Management Relations Act). Certainly, the courts of the Commonwealth of Puerto Rico are not foreign to broad antitrust private treble damage remedies to redress unfair methods of competition of the type pressed by plaintiffs in this court. See, the Puerto Rico Monopoly Act, Act No. 77 of June 25, 1964, as amended, 10 L.P.R.A. Secs. 257 et seq., especially Secs. 259(a) and 262) (Unfair Methods of Competition and Exclusive Dealing). The act explicitly vests on the Superior Court of Puerto Rico jurisdiction to entertain private treble damage suits in 10 L.P.R.A. Sec. 268(a).

26. The U.S. Court of Appeals for the First Circuit had already held *pro tanto* in the context of a state civil proceedings in *Lovely v. Laliberte,* 498 F.2d 1261, 1263–64 (1st Cir.1974), cert. den. 419 U.S. 1038, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974).

tiffs first sought relief in federal court (375 U.S. at 412, 84 S.Ct. at 463), plaintiffs herein and their privies first pressed their federal claims in state court and then refiled them in federal court. See, *Partido Nuevo Progresista v. Barreto Pérez,* 639 F.2d 825, 826, n. 2 (1st Cir.1980), cert. den. 451 U.S. 985, 101 S.Ct. 2318, 68 L.Ed.2d 842 and cases cited. In these circumstances, plaintiffs would seem foreclosed from invoking the doctrine of federal right preservation announced in *England.*

Moreover, while it is true that *England* reversed the lower court dismissal, it did so because it considered appellants to have relied in good faith on prior case law. Hence, it made the requirement of explicit reservation of federal rights in state court prospective in nature, explicitly warning that the mistaken view of the appellants in that case "will not avail other litigants who rely upon it after today's decision". (375 U.S. at 422, 84 S.Ct. at 468) Plaintiffs here are therefore not entitled to the relief afforded the *England* plaintiffs, for they actively prosecuted their claims in state court, and voluntarily invoked, as well as used, the state court process, fully and unreservedly submitting to it. Now they are and should be bound by the judgment entered by said court. The fact that the claims pressed in state court were never actually litigated is immaterial for, by operation of law, the state court dismissal here is the equivalent of a trial on the merits,[27] the same way it would have been in this court under Fed.R. Civ.Proc. 41(b). Consequently, all of the federal claims,[28] even those allegedly arising under the Tie-in Amendments, were properly dismissed by the state court. See, *Key v. Wise,* 629 F.2d 1049 (5th Cir.1980), cert. den. 454 U.S. 1103, 102 S.Ct. 682, 70 L.Ed.2d 647 (federal claim over which federal courts had exclusive jurisdiction by explicit congressional grant held barred by state court judgment entered after federal court erroneously abstained from entertaining federal claims originally brought to its attention).

Even if the assumption of jurisdiction by the state court over these claims were erroneous, and we remain unpersuaded that this is so,[29] we are not at liberty to collaterally review such an implicit exercise of jurisdiction. *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) (subject matter jurisdiction underlying bill in equity to collaterally review state court judgment because of federal prohibitions, held impermissible); *Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940) (erroneous assertion of jurisdiction by first court not collaterally reviewable); *Erspan v. Badgett,* 659 F.2d 26, 28–29 (5th Cir.1981), cert. den. 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (no jurisdiction found, on the basis of *Moitie,* to collaterally review a state court judgment of doubtful binding force after a U.S. Supreme Court decision); *Key v. Wise, supra,* 629 F.2d at 1055–1057, 1061–1068) (state court assumption of jurisdiction over federal claims within exclusive jurisdiction of federal court after erroneous abstention by federal district court, held to bar collateral review of state court judgment sought by plaintiffs upon return to federal court); Cf. *Kremer v. Chemical Construction Corporation, supra, Underwriters National Assurance Company v. North Carolina Life & Accident & Health Insurance Guaranty Association, supra* (state court collateral review of sister state court judgment is very

---

**27.** See *Rodríguez v. Baldrich, supra.*

**28.** There is no question that state court jurisdiction over the federal constitutional and civil rights claim is concurrent with that of federal courts. See, *Díaz v. Collazo,* 82 JTS 30 (March 10, 1982) and cases cited; see, also, *Lovely v. Laliberte, supra,* note 26.

**29.** Even if this were a case of exclusive federal judicial jurisdiction, the equities would tend to favor enforcement of traditional *res judicata*

preclusion inasmuch as there is simply no need to assess whether uniform national policy in antitrust enforcement would be affected given the voluntary conduct of plaintiffs in state court in refusing to comply with state judicial procedure. If anything, an interest in uniform and proper administration of justice should prevail, and in this instance, the state court judgment fosters this interest the same way as any federal judgment in similar circumstances would.

narrow and otherwise subject to *res judicata* and full-faith-and-credit constraints).

In view of the above findings and conclusions, we hold that on the basis of the record before us,[30] the courts of Puerto Rico would give full preclusive effects to the state court Judgment of May 15, 1981. This being so, we find that 28 U.S.C. Sec. 1738 commands this court to do likewise.

Inasmuch as the issues pending appellate review before the U.S. Court of Appeals for the First Circuit have been fully disposed of by the courts of Puerto Rico, we further consider this case to have been rendered moot for interim events or collateral judicial proceedings have fully disposed of the live case or controversy that at one time may have existed between opposing parties to the litigation. Based on the foregoing, our prior opinion and order entered December 2, 1980 and accompanying judgment, should be substituted [31] by the present opinion, and a judgment of dismissal on grounds of mootness should be entered. *United States v. Munsingwear, Inc.,* 340 U.S. 36, 39–41, 71 S.Ct. 104, 106–107, 95 L.Ed. 36 (1950); *Gomes v. Rhode Island Interscholastic League,* 604 F.2d 733, 736 (1st Cir.1979); and *Duke Power Co. v. Greenwood,* 299 U.S. 259, 267, 57 S.Ct. 202, 205, 81 L.Ed. 178 (1936) (when controversy becomes moot on appeal it is duty of appellate court to set aside decision below and remand cause with directions to dismiss).

The Clerk is ordered to remit forthwith the instant Findings of Fact, Conclusions of Law and Memorandum Opinion, as well as the supplementary record upon which they are based, to the Clerk of the United States Court of Appeals for the First Circuit.

SO ORDERED.

**30.** As mentioned previously, in arriving at our findings and conclusions, we have relied in part on our familiarity with Puerto Rican substantive and procedural law. In any event, as respects civil procedure, the Puerto Rican rules are very similar to and sometimes identical with the Federal Rules of Civil Procedure. This identity exists in the area of dismissals for failure to comply with discovery orders.

**31.** Given the retention of appellate jurisdiction by the United States Court of Appeals for the First Circuit, we may not vacate our prior judgment at this stage of the proceedings. However, this should not be construed as a rejection or departure from the views expressed in our original opinion to which we still adhere.